UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24022-CIV-LENARD/LOUIS

KAZANJIAN CONSULTING LLC,

     Plaintiff,

v.

EXAFER LTD.,

     Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Exafer Ltd.'s Motion to Dismiss Complaint, Or, Alternatively, to Enforce Forum Selection Clause and to Compel Arbitration ("Motion," D.E. 37) filed May 21, 2024.  Plaintiff Kazanjian Consulting LLC filed a Response on June 10, 2024, ("Response," D.E. 45), to which Exafer filed a Reply on June 17, 2024.  ("Reply," D.E. 46.)  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

Plaintiff is a Florida limited liability company offering strategic consulting services for inventors and patent holders seeking to monetize their intellectual property

---

[1] The following facts are gleaned from Plaintiff's Complaint for Anticipatory Breach of Contract, Anticipatory Breach of Third-Party Beneficiary Contract, Unjust Enrichment, Injunctive Relief, and Declaratory Judgment ("Complaint," D.E. 1-1) and are deemed to be true for purposes of ruling on the Motion.

and patents.  (Compl. ¶ 8.)  Defendant is an Israeli limited company that provides

service control technology to telecommunications operators.  (*Id.* ¶ 10.)  Defendant is

the owner of U.S. Patent Nos.: US 8,971,335 and US 8,325,733 (hereinafter, "the

Patents.")  (*Id.* ¶ 11.)

"[F]ollowing extensive negotiations conducted by phone and email," Plaintiff

and Defendant entered into "an exclusive, worldwide, broker agreement" ("Broker

Agreement," D.E. 1-1 at 17–23)[2] regarding the monetization of the Patents.  (Compl. ¶

11.)  Plaintiff attached the Broker Agreement as an exhibit to the Complaint.[3]  (*Id.*)

Therein, Defendant agreed to pay Plaintiff a commission of 30% of the net recovery

resulting from Plaintiff's efforts in monetizing the Patents.  (*Id.*)  The Broker Agreement

also included the following jurisdictional clause:

> 13      JURISDICTION
>
> 13.1   This Agreement shall be governed by, and interpreted in accordance with the laws of Florida, without regard to the principles of conflict of laws thereof.
>
> 13.2   Any legal or equitable action arising out of or relating to this Agreement shall be instituted and maintained exclusively in the courts of England and Wales except that either party may apply for an interim or emergency injunction in any court of competent jurisdiction.

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[3] A court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1): central to the plaintiff's claim and (2): the authenticity of the document is not challenged.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  In this case, Plaintiff's claims are premised on the Broker Agreement and Defendant raises no dispute as to authenticity.  (*See generally* Mot., Resp.)  The Court thus finds both requirements to be met.

(Broker Agreement, D.E. 1-1 at 22.)

Plaintiff later introduced Defendant to Chandran Iyer ("Iyer"),[4] the Chair of the Intellectual Property Law Practice at the law firm of Goldberg Segalla LLP.  (Compl. ¶ 13.)  Plaintiff was instrumental in negotiating the terms of a written retainer agreement ("Retainer Agreement," D.E. 1-1 at 37–41) between Defendant and Iyer.  (Compl. ¶ 13.)  Therein, Goldberg Segalla LLP agreed to act as Defendant's legal representative in the enforcement of its rights in the Patents.  (Retainer Agreement, D.E. 1-1 at 37.)  Specifically, the Parties agreed that "the enforcement efforts will commence with the filing of a lawsuit against Microsoft[.]"  (*Id.*)  In the event of a settlement or judgment in the Microsoft lawsuit, the Retainer Agreement states that after deductions for compensation and expenses, the remaining sum will be disbursed to Defendant and to Connie Kazanjian "pursuant to her separate written agreement" with Defendant.  (*Id.* at 40.)  After executing the Retainer Agreement, Iyer left Goldberg Segalla LLP and started his own firm, Daignault Iyer LLP.  (Compl. ¶ 16.)  Iyer took Defendant with him as a client.  (*Id*.)  Iyer continued to assure Plaintiff that its commission would be protected by Iyer and his new firm per the terms of the Broker and Retainer Agreements.  (*Id.* ¶ 17.)

Plaintiff's consulting services, information, and litigation support resulted in a lawsuit by Defendant against Microsoft in *Exafer v. Microsoft Corporation*, 1:20-cv-

---

[4] Iyer was a named defendant in this action, but the counts against him were dismissed without prejudice on February 6, 2024.  (D.E. 25 at 2.)

00131, U.S. District Court, W.D. Tex., filed December 4, 2019 (the "Microsoft Litigation").[5]  (Compl. ¶ 19.)  Plaintiff alleges it played a "pivotal role" in the Microsoft Litigation and "there is now a distinct possibility of a multimillion-dollar recovery by Exafer, which would translate to a significant Commission for Plaintiff."   (*Id.*) However, on or about August 27, 2021, Defendant informed Plaintiff that it will not pay the agreed-upon commission if it succeeds in the Microsoft Litigation.  (*Id.* ¶ 20.)

On August 14, 2023, Plaintiff filed the instant Complaint[6] asserting the following causes of action:

- Count I: Anticipatory Breach of Contract against Defendant and Co-Defendant Amir Harel ("Harel"),[7] (Compl. ¶¶ 26–34);

- Count II: Anticipatory Breach of Third-Party Beneficiary Contract against Iyer,[8] (*id.* ¶¶ 35–43);

- Count III: Injunctive Relief against Defendant, (*id.* ¶¶ 44–61);

---

[5] The Court takes judicial notice of the CM/ECF docket in this case.  *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (holding that district court could take judicial notice of online court dockets).  According to the docket, the Microsoft Litigation is set for trial on September 23, 2024.  (W.D. Tex. D.E. 234 at 1.)  In its Order Setting Jury Selection and Trial, the district court in Austin, Texas notes that "the Austin Division has only one active district court judge[.]"  (*Id.*)  Therefore, multiple criminal and civil cases may be set for the same trial week resulting in potential trial delays.  (*Id.*)

[6] The Complaint was filed in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida.  A Notice of Removal was filed on October 20, 2023.  (D.E. 1.)

[7] Harel is the owner of Exafer Ltd.  (*Id.* ¶ 10.)  Harel was a named defendant in this action, but the counts against him were dismissed without prejudice on February 6, 2024.  (D.E. 25 at 3.)  As such, Exafer Ltd. is the sole remaining Defendant in this action.

[8] As discussed, the counts against Iyer have been dismissed without prejudice.

- Count IV: Unjust Enrichment against Defendant, (*id.* ¶¶ 62–68); and

- Count V: Declaratory Relief against Defendant, (*id.* ¶¶ 70–76.)

In the instant Motion, Defendant moves for dismissal of remaining counts I, III, IV, and V of the Complaint arguing that this Court is not the proper venue because the Broker Agreement specifies that any legal or equitable action shall be instituted and maintained exclusively in the courts of England and Wales.  (Mot. at 12–13.)[9]  In its Response, Plaintiff asserts that Florida is the most appropriate forum to resolve this dispute notwithstanding the England and Wales jurisdictional clause in the negotiated Broker Agreement.  (Resp. at 11–15.)  Plaintiff further highlights that the jurisdictional clause allows either party to "apply for an interim or emergency injunction in any court of competent jurisdiction."  (*Id.* at 11 (citing Broker Agreement, D.E. 1-1 at 22.).)  In its Reply, Defendant notes that "Plaintiff complains that it will be deprived of its day in court if forced to litigate in England and Wales, however that is exactly what it bargained for in the Broker Agreement."  (Reply at 4.)  Defendant thus implores the Court to enforce the Parties' written agreement reached after "extensive negotiations." (*Id.*)

## II.    Legal Standards

A motion to dismiss based on the applicability of a forum-selection clause that requires the parties to litigate in a foreign country is properly analyzed "through the

---

[9] Defendant makes other arguments the Court does not reach in this Order.

doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S.

Ct. 568, 580 (2013).  Because 28 U.S.C. § 1404(a)[10] "and the *forum non conveniens*

doctrine from which it derives entail the same balancing-of-interests standard, courts

should evaluate a forum-selection clause pointing to a nonfederal forum in the same

way that they evaluate a forum-selection clause pointing to a federal forum." *Id.*

(citation omitted).

When parties have agreed to a valid forum-selection clause, that clause should

be given controlling weight in all but the most exceptional cases, and the district court

should ordinarily transfer a case to the forum specified in the clause. *Atl. Marine*

*Constr. Co.*, 134 S. Ct. at 582; *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281

(11th Cir. 2009) ("Forum-selection clauses are presumptively valid and enforceable

unless the plaintiff makes a 'strong showing' that enforcement would be unfair or

unreasonable under the circumstances.")  "When parties agree to a forum-selection

clause, they waive the right to challenge the preselected forum as inconvenient or less

convenient for themselves or their witnesses, or for their pursuit of the litigation.  A

court accordingly must deem the private-interest factors to weigh entirely in favor of

---

[10] Section 1404(a) authorizes a district court to "transfer any civil action to any other district or division where it might have been brought." Section 1404(a) "provides a mechanism for enforcement of forum selection clauses that point to a particular federal district." *Atl. Marine Constr. Co.*, 134 S. Ct. at 579.  A "motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors," and the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Of course, the Court is not being asked to transfer this case, as it involves a forum-selection clause specifying a foreign forum, but rather to dismiss it, allowing Plaintiff to re-file in the foreign forum.

the preselected forum." *Atl. Marine Constr. Co.*, 134 S. Ct. at 582.  Therefore, "a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

## III.   Discussion

### a.    Enforceability of Forum-Selection Clause

The validity of a forum-selection clause is determined by applying the test articulated in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  *See Kostelac v. Allianz Global Corporate & Specialty AG*, 517 F. App'x 670, 674–75 (11th Cir. 2013).  Under *Bremen*, a forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  407 U.S. at 10.  Forum-selection clauses will be enforced unless the plaintiff can make a "strong showing" that

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy.

*Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998).

Regarding the first prong, Plaintiff points to no facts showing fraud or overreaching.  To the contrary, Plaintiff asserts the Broker Agreement was executed "following extensive negotiations conducted by phone and email[.]"  (Compl. ¶ 11.)

As to the second prong, Plaintiff asserts that litigating in the courts of England of Wales would present a "tremendous inconvenience" as all witnesses are in the United States and Plaintiff would need to hire foreign counsel and travel overseas for court proceedings.  (Resp. at 12.)  Given that Plaintiff negotiated the forum-selection clause, its arguments are unavailing.  Whatever inconvenience Plaintiff "would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *M/S Bremen*, 407 U.S. 1, 17–18 (1972).  Plaintiff thus fails to make the necessary "strong showing" that the claimed inconveniences amount to being effectively deprived of its day in court.

As to the third prong, Plaintiff argues that this Court has superior knowledge of Florida law as compared to the courts in England and Wales.  (Resp. at 13.)  Plaintiff may be correct; however, courts are regularly tasked with applying foreign law.  *See, e.g., GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1033–34 (11th Cir. 2014) ("[F]ederal courts regularly interpret and apply foreign law without offending international interests." (citing Fed. R. Civ. P. 44.1))).  Moreover, this case involves a freely negotiated contract between two sophisticated companies following "extensive negotiations."  (Compl. ¶ 11.)  Once again, the forum and choice of law issues were "clearly foreseeable at the time of contracting." *M/S Bremen*, 407 U.S. 1, 17–18 (1972). The Court thus finds it proper to hold Plaintiff to its bargain.

Regarding the final prong, Plaintiff asserts "the public policy of the United States requires this dispute to be settled on home soil."  (Resp. at 13.)  However, there is no

such strong presumption in the face of a contractual forum-selection clause.  As discussed, Plaintiff characterizes the Broker Agreement as "an exclusive, worldwide, broker agreement" executed by companies in Florida and Israel.  (Compl. ¶¶ 8–11.) Forum-selection clauses "'are presumptively valid where the underlying transaction is fundamentally international in character.'" *Lipcon*, 148 F.3d at 1295 (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993)).  "Because '[w]e cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts,' . . . forum-selection clauses in international agreements 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances[.]'" *Lipcon*, 148 F.3d at 1291.  The recognized strong public policy is to give a valid forum-selection clause "controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.  In sum, Plaintiff misstates the presumption and fails to establish that this is an exceptional case warranting non-enforcement.

Given that Plaintiff fails to make the necessary strong showing, the Court finds the forum-selection clause to be valid and enforceable.  The Court now turns to an examination of the applicable *forum non conveniens* factors.

**b.     *Forum Non Conveniens***

Where a court is presented with a valid forum-selection clause, as here, a "plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-

selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581.  Plaintiff's arguments to the contrary thus fail to persuade.

Next, in conducting a *forum non conveniens* analysis in light of a valid contractual forum-selection clause, the Court does not consider arguments about the parties' private interests. *Id.* at 582.  Rather, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*  The only arguments the Court is to consider are those addressing the public-interest factors, and "because those factors will rarely defeat a [dismissal] motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*  "Public interest factors include each forum's interest in hearing the case, the administrative burdens placed on the Court in hearing the case, and the need to apply foreign law." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009) (citation omitted).

Plaintiff appears to argue that this is an "unusual case" because "Section 13 of the Broker Agreement produces an illogical result; that courts in England and Wales have jurisdiction, but must apply the laws of Florida." (Resp. at 14.)  Once again, the Court notes that this case involves a freely negotiated contract between two sophisticated companies following "extensive negotiations." (Compl. ¶ 11.)  As such, the illogical result that Plaintiff now complains of "was clearly foreseeable at the time of contracting." *M/S Bremen*, 407 U.S. 1, 17–18 (1972).  Plaintiff must therefore honor its bargain.

Regarding the public interest factors, the Court first notes that the Parties make no arguments concerning the administrative burdens placed on the courts of England and Wales in hearing the case. As to each forum's interest in hearing the case and the need to apply foreign law, the Court acknowledges Plaintiff's argument that a Florida court is better suited to apply Florida law. With that said, Plaintiff fails to establish that the courts of England and Wales are unable to apply Florida law and have no interest in hearing the case as contemplated in the Broker Agreement. Plaintiff's argument is merely that "Florida is the most appropriate forum in which to resolve this dispute." (Resp. at 11.) This is insufficient to vitiate the terms of the Parties' written agreement. Courts often allow breach-of-contract and other contract-related claims to proceed in English courts. *See*, *e.g.*, *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 884 (11th Cir. 2018); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007). Additionally, "courts have long recognized that the courts of England are fair and neutral forums." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1299 (11th Cir. 2021) (citation omitted). In sum, the Court finds that the public interest factors do not favor Plaintiff's position that the case should be tried in the Southern District of Florida.

    **c.**    **Injunctive Relief**

Assuming *arguendo* that Plaintiff could apply for an interim or emergency injunction in this Court, dismissal is still warranted. Under Florida law, the requirements for issuance of a temporary injunction are:

(1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and, (4) the entry of the injunction will not disserve the public interest.

*Biscayne Park, LLC v. Wal-Mart Stores E., LP*, 34 So. 3d 24, 26 (Fla. 3d DCA 2010).

Here, Plaintiff alleges there is a credible risk of "potential loss" by way of a withheld commission should Defendant prevail in the Microsoft Litigation. (Compl. ¶ 50.) As discussed, the Microsoft Litigation is ongoing. To date, there has been no settlement and the case is set for trial in September 2024 with a chance of a court continuance. Defendant may not ultimately make any recovery in the Microsoft Litigation. Yet, Plaintiff currently seeks entitlement to a commission based upon Defendant's speculative, future recovery in the case. (*See* Compl. ¶ 19 ([T]here is now a distinct possibility of a multimillion-dollar recovery by Exafer, which would translate to a significant Commission for Plaintiff.)).

Under Florida law, "the granting of injunctive relief is improper when a plaintiff's right to recover is based upon a future event." *Biscayne Park, LLC*, 34 So. 3d at 26 (citation omitted). If such future recovery happens — and Defendant refuses to pay the commission — Plaintiff may file a breach of contract action or move for specific performance. The Court thus finds there is an adequate remedy at law. Additionally, because Plaintiff's right to recover is based on a speculative, future event there is no basis for an interim or emergency injunction under Florida law.

**IV.    Conclusion**

Where a "plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause[,] . . . dismissal would work no injustice on the plaintiff." *Atl. Marine Constr. Co.*, 134 S. Ct. at 583 n.8. Plaintiff's decision to file suit in this District rather than in the courts of England and Wales violates the Broker Agreement that Plaintiff bargained for following extensive negotiations between the Parties.  Under these circumstances, the Court is compelled to require that the forum-selection clause be given effect.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Exafer Ltd.'s Motion (D.E. 37) is **GRANTED in part.**  The Court enforces the forum selection clause, and this case is hereby **DISMISSED**.  The Clerk shall close the case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of August, 2024.

JOAN A. LENARD
**UNITED STATES DISTRICT JUDGE**